IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. |
| CITY OF RICHMOND HEIGHTS, MISSOURI, | ) ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff New Cingular Wireless PCS, LLC d/b/a AT&T ("AT&T") alleges as follows:

## Nature of the Action

1. This action challenges the City of Richmond Heights, Missouri's unlawful denial (the "Denial") of AT&T's application for site plan review and conditional use permit to construct a 100-foot disguised flagpole support structure with associated equipment (the "Proposed Tower") at 1717 S. Big Bend Blvd (VFW Post 3500 or the "Site"). The Denial is untimely, violates the Telecommunications Act of 1996 (the "TCA"), 47 U.S.C. § 332(c)(7), and Missouri's Uniform Wireless Communications Infrastructure Deployment Act, Mo. Rev. Stat. §§ 67.5090–67.5103 (the "Siting Statute"), and is arbitrary, capricious, unreasonable, and unsupported by competent and substantial evidence in violation of the Missouri Administrative Procedure Act.

1

2.    AT&T seeks a declaration that the City's decision is unlawful, an order requiring the City to approve the application and issue all permits, or, alternatively, a declaration that the application is deemed approved by operation of Mo. Rev. Stat. § 67.5096.5, along with such other relief as the Court deems just and proper.

3.    Under 47 U.S.C. § 332(c)(7)(B)(v), this action must be heard and decided on an expedited basis.

## Jurisdiction and Venue

4.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under 47 U.S.C. § 332(c)(7)(B). The TCA provides a private right of action and directs federal courts to hear and decide such actions on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(v).

5.    The Court has supplemental jurisdiction over AT&T's state law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims occurred in this District and the Defendant is a political subdivision in this District.

## Parties

7.    Plaintiff AT&T is a Delaware limited liability company authorized to do business in Missouri and provides wireless telecommunications services in Missouri, including in Richmond Heights.

8.    Defendant City of Richmond Heights, Missouri (the "City") is a political subdivision of the State of Missouri located in St. Louis County.

## Legal Background

9.      The TCA preserves local zoning authority over personal wireless service facilities subject to important substantive and procedural limitations, including: (a) local decisions may not prohibit or have the effect of prohibiting the provision of personal wireless services; (b) denials must be "in writing and supported by substantial evidence contained in a written record;" and (c) adversely affected parties may bring suit within 30 days, to be heard and decided on an expedited basis. 47 U.S.C. § 332(c)(7)(B)(i)–(v).

10.     Missouri's Siting Statute supplements federal law. Among other things, it: (a) prohibits authorities from evaluating an applicant's business decisions about designed service, customer demand, or service quality; (b) prohibits evaluation based on the availability of other locations or imposing preferences for alternative locations; (c) requires review "in light of [the application's] conformity with applicable local zoning regulations"; (d) sets a 120-day shot clock to act on applications for new wireless support structures, after which the application is deemed approved; and (e) provides a right to judicial review. Mo. Rev. Stat. §§ 67.5094(1)–(2), (15); 67.5096.4–.6.

## Factual Background

**AT&T's Network and FirstNet**

11.     AT&T provides nationwide wireless voice and data services using licensed spectrum and operates FirstNet, the nationwide public safety broadband

3

network. Reliable, adequate, and lawful siting of facilities is essential to meet customer and public safety needs.

**The Richmond Heights Site and Application**

12.    AT&T, through its site acquisition representative Network Real Estate, LLC, identified a significant service need in Richmond Heights centered on the S. Big Bend corridor and adjacent residential neighborhoods. AT&T determined a facility at 1717 S. Big Bend Blvd. (VFW Post 3500) was necessary to address coverage and capacity deficiencies and to integrate with surrounding network sites.

13.    The site is within the City's MU (Mixed) zoning district. The City's Zoning Regulations expressly provide for and encourage disguised support structures and set forth general conditions and preferences for wireless facilities. See Richmond Heights Zoning Regulations, § 405.490(A), (D)–(G).

14.    AT&T's proposed facility is a 100-foot disguised support structure (flagpole) with associated ground equipment screened within a 6-foot faux stone composite fence. The design complies with the City's 100-foot maximum height for wireless support structures, uses camouflaging consistent with City policy, and meets or exceeds all applicable building, electrical, and safety codes, as well as FAA and FCC requirements.

15.    The proposal minimally affects the existing VFW parking lot, removing approximately five parking spaces. A February 17, 2025 parking study by CBB concluded the remaining 43 spaces far exceed observed peak demand and satisfy foreseeable needs.

16.     AT&T submitted its application for a conditional use permit and site plan approval on or about November 5, 2024 (the "Application"). The Application followed coordination with the City regarding tower design, height, and placement resulting in a reduction in height from 120 feet to 100 feet and a change in design from a monopole design to a disguised flagpole design.

17.     Between November 5, 2024 and March 25, 2025, AT&T and the City coordinated regarding the contents and substance of AT&T's Application. AT&T provided all information requested by the City and required by its ordinances.

18.     On March 25, 2025, AT&T submitted a final and complete Application.

19.     The City did not request any additional information within thirty days of March 25, 2025. Instead, on or about June 25, 2025, the City acknowledged that the Application was complete and set the Application for hearing before the Planning and Zoning Commission.

**Plan and Zoning Commission Proceedings**

20.     The City's Zoning Administrator prepared a written report for Petition 2025-04 stating the proposed disguised antenna "appears to meet the general conditions, design, location and setbacks of the Ordinance."

21.     At the July 17, 2025 hearing, AT&T's representative explained the need for the site, the engineering basis for the proposed height and location, the camouflaged design, compliance with codes, and that the site would address existing coverage/capacity gaps with a roughly 2-mile service radius. Questions from Commissioners included lighting, height, alternative placement, and maintenance.

5

22.     One nearby resident voiced generalized objections based on aesthetics, perceived RF "radiation" concerns, and speculative property value impacts. No substantial evidence was presented to contradict AT&T's need, design, or code compliance.

23.     The Commission voted to recommend denial of the Application.

**City Council Final Action**

24.     On August 18, 2025, the City Council considered the Commission's report, took public comment for and against the Application, and voted to "support Plan & Zoning Commission's denial of Petition No. 2025-04."

25.     Prior to the Council meeting, AT&T submitted a property value impact study (dated August 15, 2025) by Andrew Baker, MAI, Valbridge Property Advisors, concluding the proposed facility would not measurably impact surrounding property values based on paired sales in the local market. The City had no contrary evidence, expert or otherwise.

26.     At all times, AT&T represented and was prepared to demonstrate that the facility complies with FCC RF emissions standards. Any consideration of RF "health" concerns is preempted by 47 U.S.C. § 332(c)(7)(B)(iv).

27.     The City did not issue a written decision with reasons supported by substantial evidence in the written record. The City's minutes from the August 18 hearing were sparse and did not provide a factual basis for the Denial.

28.     To the extent the City's Denial rests on generalized aesthetic objections, speculative impacts, requests to move or relocate the facility, perceived service "needs," or RF concerns, each violates federal and/or state law.

**Missouri Shot Clock**

29.     AT&T submitted a complete application no later than March 25, 2025. The City did not provide a timely written notice of material incompleteness within 30 days with specific deficiencies, and no further tolling occurred under Mo. Rev. Stat. § 67.5096.4(1).

30.     The City failed to make a final decision within 120 days of receiving the complete Application as required by Mo. Rev. Stat. § 67.5096.4(2)–(5). The City's August 18, 2025 denial occurred after the 120-day shot clock expired, and the Application was therefore deemed approved by operation of Mo. Rev. Stat. § 67.5096.5.

31.     This action is timely under 47 U.S.C. § 332(c)(7)(B)(v) because it is commenced within 30 days of the City's August 18, 2025 final action.

32.     AT&T has exhausted all administrative remedies and further administrative action would be futile.

### Claims for Relief

### COUNT I
*Violation of the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(iii)*
*(Lack of Substantial Evidence; Written Decision)*

33.     AT&T realleges its prior paragraphs.

34.     The TCA requires that any decision to deny a request to place, construct, or modify personal wireless service facilities be in writing and supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii).

35.     The City's Denial is not supported by substantial evidence in the written record because, among other reasons: (a) the Zoning Administrator's written report found the Application met the City's ordinance criteria; (b) the record contains no substantial evidence that the facility violates any applicable zoning standard; (c) the record contains unrebutted evidence addressing parking, design, screening, code compliance, and property value concerns; (d) objections raised were generalized, speculative, or legally impermissible (RF health concerns); and (e) the City's Council minutes provide no reasoned, evidentiary findings grounded in City code.

36.     The City's decision is also defective for failure to issue a written decision that articulates the reasons for denial as required by § 332(c)(7)(B)(iii).

37.     AT&T lacks an adequate remedy at law and is entitled to expedited injunctive and declaratory relief ordering approval of the Application and issuance of permits.

## COUNT II
*Violation of the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(i)(II)*
*(Effective Prohibition)*

38.     AT&T realleges the prior paragraphs.

39.     Local regulations and decisions may not prohibit or have the effect of prohibiting the provision of personal wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(II).

40.     AT&T has a significant gap in coverage and capacity in the S. Big Bend corridor and adjacent neighborhoods in Richmond Heights and must install the

8

proposed facility to remedy that gap and relieve strain on surrounding sites. The proposed camouflaged 100-foot flagpole at the VFW is the least intrusive and only feasible means to address the gap, meeting all local code requirements.

41. The City's denial prevents AT&T from remedying the coverage and capacity deficiencies and materially inhibits AT&T's ability to provide personal wireless services, constituting an effective prohibition under the TCA.

42. AT&T is entitled to expedited injunctive and declaratory relief ordering approval and issuance of permits.

### COUNT III
*Violation of Missouri Siting Statute, Mo. Rev. Stat. §§ 67.5094, 67.5096*
*(Prohibited Acts; Failure to Evaluate by Local Code; Discrimination)*

43. AT&T realleges its prior paragraphs.

44. The City violated § 67.5094 by, among other things: (a) evaluating AT&T's business decisions with respect to designed service, customer demand, or service quality (subsections (1), (6)); (b) evaluating the Application based on the availability or preference for other potential locations or relocation on the site (subsection (2)); and (c) imposing unreasonable appearance or screening expectations (subsection (16)).

45. The City further violated § 67.5096.4(1) by failing to review the Application in light of its conformity with applicable local zoning regulations. The record shows the Application conformed to City code, yet was denied without lawful code-based reasons.

46. The City's decision unreasonably discriminates among providers of functionally equivalent services, contrary to § 67.5094(15) and 47 U.S.C. §

332(c)(7)(B)(i)(I), because, on information and belief, the City has allowed similar wireless facilities (including existing antennas at City Hall and AB Green Park) while singling out AT&T's conforming, camouflaged facility for denial based on non-code considerations.

47.     AT&T is entitled to declaratory and injunctive relief under Missouri law ordering approval and issuance of permits.

## COUNT IV
*Violation of Missouri Siting Statute, Mo. Rev. Stat. § 67.5096.5*
*(Deemed Approval)*

48.     AT&T realleges its prior paragraphs.

49.     The City failed to act on AT&T's complete Application within 120 calendar days as required by § 67.5096.4, and no valid tolling occurred. Under § 67.5096.5, the Application is deemed approved by operation of law.

50.     AT&T is entitled to a declaration that the Application is deemed approved and an order authorizing immediate construction and operation.

## COUNT V
*Missouri Administrative Procedure Act,*
*Mo. Rev. Stat. § 536.100 et seq. and/or § 536.150*
*(Arbitrary, Capricious, Unsupported by Competent and Substantial Evidence; Abuse of Discretion)*

51.     AT&T realleges the prior paragraphs.

52.     The City's denial is final agency action reviewable under Mo. Rev. Stat. § 536.100 (contested case) and, alternatively, § 536.150 (noncontested case). The decision is illegal, arbitrary, capricious, unreasonable, an abuse of discretion, and unsupported by competent and substantial evidence on the whole record because: (a) the uncontroverted evidence shows compliance with zoning requirements; (b) staff

noted the Application's compliance with all applicable zoning provisions; (c) denial rested on generalized neighborhood opposition, speculation, and legally prohibited considerations; and (d) the City failed to articulate lawful, code-based reasons supported by evidence.

53.     AT&T is entitled to judicial review, reversal, and an order compelling approval and issuance of permits.

### Prayer for Relief

AT&T respectfully requests that the Court:

a. Hear and decide this action on an expedited basis pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

b. Declare that the City's denial violates the TCA, including 47 U.S.C. § 332(c)(7)(B)(i), (iii), and (iv), and Missouri law, including Mo. Rev. Stat. §§ 67.5094, 67.5096, and the Missouri Administrative Procedure Act;

c. Declare that the Application is deemed approved under Mo. Rev. Stat. § 67.5096.5, and/or order the City to approve the Application and issue all permits necessary to construct, operate, and maintain the facility;

d. Enjoin the City from further actions inconsistent with the TCA and Missouri law with respect to this Application;

e. Award AT&T such further relief as the Court deems just and proper.

Dated: September 17, 2025       Respectfully submitted,

By: */s/ Sasha D. Riedisser*
     Luke G. Maher
     Sasha D. Riedisser
     Norton Rose Fulbright US LLP
     7676 Forsyth Blvd., Suite 2230
     St. Louis, Missouri 63105
     Telephone: (314) 505-8800
     Facsimile: (314) 505-8899
     Luke.maher@nortonrosefulbright.com
     Sasha.riedisser@nortonrosefulbright.com

*Attorneys for Plaintiff*